UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-12568-RGS

LISIS MEJIA

v.

SHARON & CRESCNT UNITED CREDIT UNION

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

June 22, 2026

STEARNS, D.J.

On October 14, 2021, pro se plaintiff Lisis Mejia entered into a consumer loan agreement with defendant Sharon & Crescent United Credit Union (Sharon Credit) to fund her purchase of a 2014 Jeep Compass. After some delayed monthly payments, and ultimate repossession of the vehicle, Mejia commenced this litigation in September of 2025, asserting that Sharon Credit's "willful and/or negligent reporting of false information to credit reporting agencies and failure to reasonably investigate after being notified of [her] disputes," violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Compl. ¶ 1. Mejia asserts that Sharon's Credit's false reporting caused her "denial of credit opportunities; damage to her credit reputation; and emotional distress and mental anguish." Compl. at VI (a)-(c).

Sharon Credit moves for summary judgment asserting that its reporting "was entirely accurate and that [it] conducted a thorough investigation that confirmed this accuracy." Def.'s Mot. for Summ. J. (Dkt #17) at 1. Notwithstanding, it claims that "[a] borrower whose vehicle has been repossessed cannot credibly claim to have made 'consistent payments'."

BACKGROUND[1]

According to Sharon Credit's Amended Statement of Undisputed Material Facts (ASUMF), on October 14, 2021, Mejia entered into a closed-end consumer loan with the Credit Union secured by a 2014 Jeep Compass requiring monthly payments of $285.17, due on the 28th of each month. ASUMF ¶¶ 3-4 (Dkt # 26-1). Beginning with the August 28, 2024 installment, Mejia stopped making timely monthly payments under the loan agreement. *Id*. ¶ 5. She failed to make timely payments for August,

---

[1] On April 28, 2026, Mejia asked the court to withdraw Sharon Credit's Request for Admissions that had been "deemed admitted" because of her failure to file timely responses. *See* Dkt # 21. Along with the motion, Mejia filed an Amended Responses to Defendants First Set of Requests for Admission (Dkt #23). In the absence of Sharon Credit's opposition and the reasonableness of the proposed responses, the court allowed Meija's motion. Because Sharon Credit could no longer rely on certain facts deemed admitted, on May 28, 2026, it asked to file a supplemental motion for summary judgment. *See* Dkt # 26. The court immediately allowed the motion; Meija opposed the supplemental summary judgment motion that same day and filed a counter statement of Material Facts in Opposition to the Amended Motion. *See* Dkt # 30 and # 31. Sharon Credit filed a Reply on June 2, 2026.

September, October, November, or December 2024, January 2025, or February 2025. *Id.* ¶¶ 7-12. Meija admits that she did not make timely payments beginning in August 2024. Pl.'s Counter-Statement of Material Facts in Opposition to Defendant's Amended Motion For Summary Judgment (Pl.'s Counter SOMF - Dkt # 31 ¶¶ 7, 8-11). Sharon Credit reported the following account status to all four credit bureaus (Experian, TransUnion, Equifax, and Innovis) each month: (a) August 31, 2024 — over 30 days late; (b) September 30, 2024 — over 60 days late; (c) October 31, 2024 — over 30 days late; (d) November 30, 2024 — over 60 days late; (e) December 31, 2024 — over 60 days late; (f) January 31, 2025 — over 90 days late; (g) February 28, 2025 — over 120 days late; (h) March 31, 2025 through July 31, 2025 — charged off; (i) August 31, 2025 — paid charge off. ASUMF ¶¶ 5-10; Pl.'s Counter SOMF ¶ 13 (Mejia does not dispute the accuracy of this reporting.). Mejia made three cash payment visits to a Sharon Credit branch: April 1, 2025 ($300.00, teller Rozana Amado); April 18, 2025 ($300.00, teller Jordan Quersher); and June 27, 2025 ($286.00, teller Leah Parker). SUMF ¶¶ 20-22. Sharon Credit's business records contain no notation that Mejia raised a credit dispute at any of these visits. SUMF ¶ 23.

In October of 2024, Sharon Credit sent Mejia's account to a repossession company. *Id.* ¶ 17. On May 13, 2025, Mejia's 2014 Jeep

3

Compass was physically repossessed at 8:33 a.m. from 584 Bridge Street, Weymouth. *Id.* Later that day, Mejia paid $1,616.12, calculated as six consecutive missed monthly payments from December 2024 through May 2025 ($1,711.02), less a $94.90 partial December 2024 payment, to redeem the vehicle. *Id.* ¶¶ 18. The vehicle was never reported to any credit bureau as repossessed. SUMF ¶ 19

On July 1, 2025, Mejia's jeep was declared a total loss. Mapfre Insurance issued a check dated August 19, 2025, in the amount of $7,514.53, payable to Sharon Credit for the loss. Sharon Credit posted the check at 12:44 p.m. on August 21, 2025. Mejia paid Sharon Credit the $218.40 deficiency. After the loan was paid in full on August 21, 2025, Sharon Credit updated all credit bureaus to reflect Paid Charge Off status on August 31, 2025. SUMF ¶ 28.

Meija "does not contest the § 1681s-2(a) Bar [private right of action] or the scope of the actionable period." Pl.'s Opp'n at 3. Meija claims that the period begins when Experian transmitted Mejia's credit record dispute to Sharon Credit on August 14, 2025. SUMF ¶ 29. Barbara Mantalos, Collections Supervisor, reviewed the complete loan transaction history. SUMF ¶ 30. The investigation was completed and the response was

transmitted to Experian at 9:39 a.m. on August 21, 2025, the same day as the loan was paid in full (12:44 p.m.).  SUMF ¶ 31.

In her Opposition, Mejia clarifies her position regarding her claims.

> I am not here to argue that the charge-off on my account was unwarranted. The record shows I missed payments, fell behind, and my vehicle was repossessed and redeemed in May 2025. I have admitted those facts under oath, and I stand by those admissions.
>
> What is in dispute is something narrower and more specific: What happened on the morning of August 21, 2025, when Barbara Mantalos transmitted Response Code 01 to Experian at 9:39 a.m., certifying that every item in my credit file was accurate as reported.  At that moment, Defendant had known for forty-four days that my vehicle had been declared a total loss.  The Mapfre Insurance check that would pay off the entire loan balance was dated August 19, 2025, two days earlier, and was being processed through Defendant's own mail intake that same morning.  By 12:44 p.m. that day, the loan was paid in full.
>
> The question for the jury is a simple one: was it reasonable for Defendant to certify the charge-off as accurate at 9:39 a.m. on the same morning the payoff check arrived, without ever checking whether an insurance payment was on its way in? Defendants say yes.  I respectfully submit that a reasonable jury could say no.

Pl.'s Opp'n (Dkt #30) at 2.

To that end, Meija filed a sur-reply on June 16, 2026, to which she attaches a letter she received from Mapfre Insurance dated July 18, 2025, and a letter she received from Sharon Credit Union dated August 26, 2025, confirming that her loan was paid in full.   Meija argues that these exhibits

expose a critical gap in the Mantalos Declaration: Mantalos states she did not review the Mapfre Insurance proceeds because the dispute weas initiated before those funds were received. But that explanation omits the prior six weeks of correspondence and coordination the Credit Union conducted with Mapfre as the required lienholder in the total loss process. Second they extend the period during which Experian reported a materially misleading picture of Plaintiff's account from a three-hour window – as Defendant characterizes it – to a confirmed minimum of five days during which the Credit Union's own president had acknowledged the loan was paid and the credit file still showed an active charge-off.

Sur-Reply, Dkt # 33-1 at 2.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the

motion." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

Under 15 U.S.C. §§ 1681m(c) and 1681m(h)(7), companies are not liable if they can show by a preponderance of the evidence that they maintained reasonable procedures to assure compliance. This includes, but is not limited to, procedures for handling reinvestigations of disputed information. Meija argues that "whether a furnisher's investigation under 15 U.S.C. § 1681s-2(b) was reasonable is ordinarily a question of fact for the jury, citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir, 2004).

However, before we get to the essence of Meija's claims and whether the court can decide the matter without a trial, she is obliged to demonstrate that she has standing, which includes a "stake in the outcome." *Lujan v. Defs of Wildlife*, 504 U.S. 555, 560-561 (1992). The first element of Article III standing is injury in fact. This element is defined as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). In the context of an FCRA claim, the Supreme Court emphasized that "an injury in fact must be both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340

(2016) (emphasis in original). While recognizing that concrete injuries may be "intangible," the Court clarified that, "a plaintiff [does not] automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 340-341. Even for a statutory violation, Article III "requires a concrete injury" beyond a "bare procedural violation." *Id.* at 341. "A violation of one of the FCRA's procedural requirements may result in no harm," such as the mere inclusion of inaccurate information. *Id.* at 342. In *Transunion LLC v. Ramirez*, 594 U.S. 413 (2021), the Court found no concrete harm where plaintiffs failed to demonstrate that the inaccurate information in their "credit files were ever provided to third parties or caused a denial of credit . . . the risk of dissemination to third parties was too speculative to support Article III standing." *Id.* at 437-438.

Even if the court agreed that Meija's response to the summary judgment motion presented disputed material facts for a jury to decide the reasonableness of defendant's investigation, she fails to show standing/a "concrete" injury.[2]    Even if a jury might find that Sharon Credit's

---

[2] Meija asserts that what was argued by defendant as being a three-hour window is potentially a five-hour window (from August 26 to August 31, 2025). Meija claims it creates a dispute of fact whether Sharon Credit Union's posting and credit reporting was part of the "ordinary course." *See* William Moore Aff., Dkt # 26-4 ¶¶ 3, 4, and 7.

investigation and/or reporting of the loan was misleading during the three hours or five days, Meija fails to show that, between August 26, 2025, 9:39 a.m., when the report issued, and August 31, 2025, when her loan was reported to the credit bureaus paid-in-full, the reporting caused her harm – that her "credit files were provided to third parties or caused a denial of credit." *See Id.* at 438; Pl.'s Counter Statement of Material of Facts in Opposition to Defendants Amended Motion for Summary Judgment, Dkt #31. Meija claims that if there was any concrete harm during the five days "is a question of fact for the jury." Dkt #33-1 at 6. But, as an element of her claim, Meija has presented no evidence of injury for the jury to consider.

ORDER

Accordingly, Defendant's Motion for Summary judgment is ALLOWED. The Clerk may enter judgment for defendant and close this case.

**SO ORDERED.**

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

9